**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

TOMMIE HARDY             )
                                        )
            Plaintiff,      )
                                        )
vs.                               )      Case No.: 4:19-cv-00237-DGK
                                        )
THE CITY OF KANSAS CITY,   )
MISSOURI,                    )
                                        )
            Defendant.    )

## FIRST AMENDED COMPLAINT

Plaintiff, TOMMIE HARDY, by and through his attorneys, states the following as his First Amended Complaint:

1.      Plaintiff is, and at all relevant times was, an individual residing in Kansas City, Missouri.

2.      Defendant, The City of Kansas City, Missouri, is a municipality whose primary place of business is at 414 East 12th Street, Kansas City, Missouri 64106.

3.      As a municipality, Defendant is an arm and/or agent of the State of Missouri.

4.      Defendant's actions, inactions, omissions, and/or misconduct as alleged herein occurred by and/or through its agents, servants, and/or employees acting within the course and scope of their employment and/or under color of state law, statute, ordinance, regulation, pattern, policy, procedure, custom, and/or usage.

5.      Plaintiff brings this claim pursuant to 42 U.S.C. §§ 1981 and 1983.

6.      Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343, which provide for original jurisdiction of this Court in suits based respectively on federal questions and authorized

Case 4:19-cv-00237-DGK    Document 25    Filed 09/11/19    Page 1 of 22

by 42 U.S.C. § 1983 to redress the deprivation under color of state law, statute, ordinance, regulation, custom, or usage of any right, privilege, or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of Jackson County, Missouri which is situated within the judicial district for the United States District Court for the Western District of Missouri.

8.     Additionally and/or alternatively, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to Plaintiff's claim occurred in Jackson County, Missouri which is situated within the judicial district for the United States District Court for the Western District of Missouri.

## FACTS COMMON TO ALL COUNTS

9.     Plaintiff is African American.

10.     As an African American, Plaintiff is a member of a protected class.

11.     In or about February 1993, Plaintiff began employment with Defendant as a maintenance worker.

12.     On or about June 29, 2003, Defendant promoted Plaintiff to Senior Plant Operator.

13.     At all relevant times herein, Plaintiff has met Defendant's legitimate employment expectations.

14.     Defendant has, and has had, contracts with Mark One Electric Co., Inc. ("MOE"), a Missouri company who provides electrical services.

15.     On or about May 18, 2016, Defendant assigned Plaintiff to work with and/or assist MOE and MOE employees on one of Defendant's electrical power boxes ("assignment").

16.     On or about May 18, 2016, when Plaintiff was performing work on the assignment, Robert Slusher ("Slusher") was Plaintiff's supervisor.

17.     Slusher is Caucasian.

18.     On or about May 18, 2016, shortly after Plaintiff began working with MOE personnel on the assignment, Slusher:

      a)    pulled Plaintiff away from Plaintiff's assignment;

      b)    told Plaintiff that he needed Plaintiff's assistance; and

      c)    told Plaintiff that Larry Hoffman ("Hoffman")was replacing Plaintiff to work with MOE personnel on the assignment.

19.     Hoffman is another employee of Defendant.

20.     Hoffman is Caucasian.

21.     On or about May 18, 2016, after Slusher pulled Plaintiff from his assignment, Plaintiff:

      a)    spent the remainder of the day assisting Slusher;

      b)    no longer worked that day with MOE or MOE personnel; and

      c)    no longer worked on the assignment on which Hoffman replaced him.

22.     On or about May 18, 2019, while Hoffman was working with MOE in Plaintiff's stead, an error was made which required the City to drain a basin containing approximately 3.5 million gallons of water.

23.     On or about September 27, 2016, Defendant directed Plaintiff to attend a meeting with Slusher, Mike Klender, Carl Stepp, John Thigpen, and Cleven Washington.

24.     During the meeting, Defendant suspended Plaintiff for three days without pay because:

a)      Plaintiff (allegedly) abandoned his work assignment on or about May 18, 2016; and/or

b)      Plaintiff had received a letter of reprimand in or about August 2006.

25.      Plaintiff explained during the meeting which occurred on or about September 27, 2016 that:

a)      Slusher had pulled Plaintiff from the MOE assignment on May 18, 2016; and

b)      Plaintiff had no involvement in the incident that led to the City needing to drain a basin containing approximately 3.5 million gallons of water.

26.      Hoffman denied being placed with MOE in Plaintiff's stead.

27.      Defendant took Hoffman's word over Plaintiff's because Plaintiff is African American, whereas Hoffman is a Caucasian.

28.      Plaintiff lost wages for the three days he was suspended without pay.

29.      In or about 2017, Plaintiff sustained a shoulder injury and asked Defendant to be temporarily reassigned to work which did not require Plaintiff to use his injured shoulder.

30.      In 2017, when Plaintiff asked to be temporarily reassigned to work which did not require Plaintiff to use his injured shoulder, Kevin Williams ("Williams") was a Chief Plant Operator for Defendant and supervised Plaintiff.

31.      Williams is Caucasian.

32.      In response to Plaintiff's request to be temporarily reassigned to work which did not require him to use his injured shoulder, Williams advised Plaintiff that, to receive the temporary reassignment, Plaintiff would need to provide a doctor's note.

33.      Ted Graham ("Graham") was an employee of Defendant who worked in the same department as Plaintiff.

34.     Graham is Caucasian.

35.     In or about 2018, Graham reported to Williams and/or Defendant that he was not feeling well.

36.     In or about 2018, after Graham reported he was not feeling well, Williams and/or Defendant reassigned Graham.

37.     In or about 2018, when Williams and/or Defendant reassigned Graham, Williams and/or Defendant did not require Graham to provide a doctor's note.

38.     Defendant's unconstitutional patterns, policies, practices, and/or customs of depriving African American employees, including Plaintiff, of his rights, privileges, and/or immunities include, but are not limited to:

    a)     unnecessarily reassigning African American employees which, among other things, disrupts the work performed by African American employees;

    b)     requiring African American employees to provide doctors' notes in order to obtain temporary reassignments, but not requiring Caucasian employees to provide the same;

    c)     accepting and/or believing facts and/or information provided by Caucasian employees instead of the accepting and/or believing African American employees;

    d)     disciplining African American employees for, among other things, attendance and/or performance issues while not disciplining Caucasian employees for the same or similar attendance and/or performance issues;

    e)     setting up African American employees to be disciplined and/or fired but not setting up Caucasian employees to be disciplined and/or fired;

f) looking for reasons to discipline and/or fire African American employees;

g) allowing its "workplace office responsible for investigating claims of discrimination against a supervisor [to] fail[] to act, [to] let such complaints languish, or [to] prematurely terminate[] discrimination investigations" [from which] affected employees would have to conclude that their complaints will not be taken seriously by an indifferent or possibly complicit employer" (*McKinney v. City of Kansas City, Missouri*, WD81339, *13-14 (Mo. App. W.D. March 05, 2019);

h) allowing "supervisors and superiors [to] sit on raises, promotions, and re-assessments, or fail to make eye contact during job interviews, [which] such improper conduct is as damaging as unwanted physical contact or degrading comments" *McKinney v. City of Kansas City, Missouri*, WD81339, *14 (Mo. App. W.D. March 05, 2019);

i) allowing managers or supervisors to "improperly downgrade[]" performance evaluations "resulting in a lower raise" from which "a minority employee would be hard -pressed to conclude that race was not at issue *McKinney v. City of Kansas City, Missouri*, WD81339, *14 (Mo. App. W.D. March 05, 2019);

j) allowing "supervisor[s] [to] tells her superiors that work that was supposed to be done is not being done, and it was the supervisor who instructed the minority employees not to do work, [from which] the conclusion that they have been set up to fail is inescapable" *McKinney v. City of Kansas City, Missouri,* WD81339, *14 (Mo. App. W.D. March 05, 2019);

k)  allowing "supervisor and human resources personnel [to] summarily refuse to accommodate the needs of a minority employee for time off, but work to help other employees in a similar situation, and then terminate that employee without giving a serious thought to a lesser sanction for taking time off without approval" in which case "motivation is clearly suspect" *McKinney v. City of Kansas City, Missouri*, WD81339, *14 (Mo. App. W.D. March 05, 2019);

l)  allowing, condoning, or not disciplining employees who make racist comments and/or racial slurs;

m)  treating Caucasian employees preferentially over African American employees as described herein and in other way to be established by the evidence;

n)   permitting its employees to retaliate, and/or failing to take appropriate steps to prevent or eliminate retaliation, against employees who report harassment, discrimination, and/or a hostile work environment;

p)  failing to adequately train its employees with respect to harassment, discrimination, retaliation, and/or hostile work environment;

q)  failing to adequately investigate complaints of discrimination, harassment, retaliation, and/or hostile work environment;

r)  failing to implement prompt and effective remedial action to end the discrimination, harassment, retaliation, and/or the hostile work environment to which African Americans, including Plaintiff, were subjected when

Case 4:19-cv-00237-DGK   Document 25   Filed 09/11/19   Page 7 of 22

Defendant knew or should have known of the discrimination, harassment, retaliation, and/or the hostile work environment.

39.     The following decisions/verdicts are among those in which juries and/or Courts have found that Defendant engaged in racial discrimination/harassment, had a racially hostile work environment, and/or retaliated against employees for reporting discrimination:

a)     *Johnson v. City of Kansas City, Missouri*, Case No. 1616-CV08470. In *Jonson,* the plaintiff alleged that, between approximately 2014 and 2016, Defendant engaged in race discrimination, created a hostile work environment based on race, and retaliated against him for reporting race discrimination. On April 05, 2019, a jury found Defendant retaliated against Plaintiff for reporting race discrimination, awarded the plaintiff compensatory damages, and assessed punitive damages against Defendant.

b)     *McKinney v. City of Kansas City, Missouri*, Case No. 1616-CV02932. In *McKinney*, the plaintiff alleged that, between approximately 2011 and 2015, Defendant engaged in race discrimination, created a racially hostile work environment, and retaliated against her for reporting race discrimination. On August 07, 2017, the jury found Defendant created a racially hostile work environment and awarded compensatory damages. The Missouri Court of Appeals upheld the verdict finding, *inter alia,* that "a reasonable jury would conclude that this ongoing and pervasive conduct, subjectively perceived as racial harassment, added up over time to tell an African-American employee that, on the basis of her race, her work and expertise were not valued." WD81339, *14 (Mo. App. W.D.  March 05, 2019)

40.     The jury verdicts and/or court decisions described in the preceding paragraph and similar jury verdicts and/or court decisions is further evidence:

a)     of Defendant's patterns, policies, practices, and/or customs of depriving its employees including, but not limited to, African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation;

b)     of Defendant's patterns, policies, practices, and/or customs of failing to take appropriate steps to remedy the deprivation of the constitutional rights, privileges, and/or immunities including, but not limited the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation suffered by its employees including, but not limited to, African American employees (including Plaintiff);

c)     that Defendant knew, or should have known, of patterns, policies, practices, and/or customs that deprived its employees, including African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation; and/or

d)     that Defendant knew, or should have known, that it had not taken, or was not taking, appropriate steps to remedy the patterns, policies, practices, and/or customs that deprived African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including,

but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation.

41.     The following individuals who are, or were, employed by Defendant were permitted by Courts to testify as "me too" witnesses about the harassment, discrimination, hostile work environment, and/or retaliation to which they were subjected while employed by Defendant, including, but not limited to, testifying as follows:

   a)   S. Marshall testified in *McKinney v. City of Kansas City, Missouri* that she filed a complaint with the MCHR alleging race discrimination and retaliation and that Defendant did not investigate her complaints of discrimination. Case No. 1616-CV02932, aff'd WD81339, *14 (Mo. App. W.D. March 05, 2019);

   b)   R. DePeralta testified in *McKinney v. City of Kansas City, Missouri* that she filed a complaint with the MCHR alleging discrimination and retaliation. She further testified Defendant never investigated her complaints of discrimination, did not speak to the witnesses she identified, and did not talk with her about the working conditions. Case No. 1616-CV02932, aff'd WD81339, *14 (Mo. App. W.D. March 05, 2019);

   c)   M. DePeralta testified in *McKinney v. City of Kansas City, Missouri* that he filed a complaint of with the MCHR in which he alleged race discrimination and retaliation. He further testified that, in his Charge he alleged "[n]o one from the City ever investigates complaints to a conclusion where employees actually get held accountable for their actions. This is known city wide and it allows management to do whatever they want." Case No. 1616-CV02932,

aff'd WD81339, *14 (Mo. App. W.D. March 05, 2019);

d)  N. Wilson testified in *McKinney v. City of Kansas City, Missouri* that she was a Human Relations Specialist/Civil Rights Investigator for Defendant. She further testified she filed complaint with Defendant's HR Office alleging sex discrimination and retaliation. Between 2014 and 2017, she made several complaints to Defendant's directors, managers, and human resources personnel about ongoing harassment, discrimination, and retaliation and it was Defendant's utter lack of response to these complaints which forced her to file a Charge of Discrimination with the MCHR in May 2017. In July 2017, just weeks before she testified on August 03, 2017, Defendant terminated her employment. Case No. 1616-CV02932, aff'd WD81339, *14 (Mo. App. W.D. March 05, 2019);

e)  C. Washington testified in *Johnson v. City of Kansas City, Missouri* that he and other African American employees were harassed and discriminated against while working for Defendant. He testified that Caucasian employees were (i) promoted over African Americans; ii) permitted to take courses that African Americans were denied; iii) disciplined less harshly than African Americans; iv) were not disciplined for the same misconduct for which it disciplined African Americans; v) given preferential job assignments over African Americans; and vi) received better training than African American employees. Case No. 1616-CV08470.

f)  T. Sanders testified in *Johnson v. City of Kansas City, Missouri* that Defendant discriminated against him on the basis of race. He further

testified that i) Caucasian employees were promoted over African American employees; ii) Defendant disciplined African Americans more harshly than Caucasian employees; iii) Defendant disciplined African Americans when it did not discipline Caucasian employees for the same conduct; and iv) Defendant set up African American employees to get them disciplined and/or fired. Case No. 1616-CV08470.

g) W. Dunnell testified in *Johnson v. City of Kansas City, Missouri* that Defendant discriminated against him on the basis of race. He further testified that (i) Defendant looked for reasons to discipline African American employees; (ii) African American employees were written up for conduct which was not against Defendant's policies but Defendant did not write up Caucasian employees for violating policies; (iii) Caucasian employees were promoted over African American employees; (iv) Caucasian employees were given preferential job assignments over African American employees; (v) Caucasian employees received better training than African American employees; and (vi) Caucasian employees and were given opportunities for more responsibility than African American employees. Case No. 1616-CV08470.

42. The testimony of the witnesses identified in the preceding paragraph and similar witness testimony in other cases is further evidence:

a) of Defendant's patterns, policies, practices, and/or customs of depriving its employees including, but not limited to, African American employees (including Plaintiff), of constitutional rights, privileges, and/or

immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation;

b) of Defendant's patterns, policies, practices, and/or customs of failing to take appropriate steps to remedy the deprivation of the constitutional rights, privileges, and/or immunities including, but not limited the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation suffered by its employees including, but not limited to, African American employees (including Plaintiff);

c) that Defendant knew, or should have known, of patterns, policies, practices, and/or customs that deprived its employees, including African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation; and/or

d) that Defendant knew, or should have known, that it had not taken, or was not taking, appropriate steps to remedy the patterns, policies, practices, and/or customs that deprived African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation.

43. The following cases are among those in which Defendant's employees, or former employees, filed causes of action against Defendant alleging harassment, discrimination, hostile work environment, and or retaliation:

a) *Walsh v. City of Kansas City, Missouri*, Case No. 1216-CV05992, aff'd 481 S.W.3d 97 (Mo. App. W.D. 2016);

b) *Sanders v. City of Kansas City, Missouri,* Case No.1416-CV29787;

c) *Nunley v. City of Kansas City, Missouri*, Case No. 1516-CV26781;

d) *McKinney v. City of Kansas City, Missouri*, Case No. 1616-CV02932, aff'd WD81339, *14 (Mo. App. W.D.  March 05, 2019);

e) *Johnson v. City of Kansas City, Missouri*, Case No. 1616-CV08470;

f) *Ramsay v. City of Kansas City, Missouri*, Case No.1616-CV12722;

g) *Moses v. City of Kansas City, Missouri,* Case No. 1716-CV00967;

h) *Carter v. City of Kansas City, Missouri*, Case No. 1716-CV12806;

i) *McCormack v. City of Kansas City, Missouri*, Case No. 1716-CV14118;

j) *Moye v. City of Kansas City, Missouri*, Case No.1716-CV14544;

k) *Wilson v. City of Kansas City, Missouri,* Case No. 1716-CV16664;

l) *Jones v. City of Kansas City, Missouri*, Case No. 1716-CV20259;

m) *Vittori v. City of Kansas City, Missouri,* Case No. 1816-CV03729;

n) *Ragan v. City of Kansas City, Missouri,* Case No. 1816-CV09470;

o) *Baker v. City of Kansas City, Missouri*, Case No. 1816-CV11892;

p) *Webster v. City of Kansas City, Missouri,* Case No. 1816-CV14744;

q) *Harris v. City of Kansas City, Missouri,* Case No. 1816-CV18083;

r) *Williams v. City of Kansas City, Missouri*, Case No. 1816-CV18116;

s) *Beckwith v. City of Kansas City, Missouri*, Case No. 1816-CV19787;

t) *Jones v. City of Kansas City, Missouri*, Case No. 1816-CV22819;

u) *Johnson v. City of Kansas City, Missouri*, Case No. 1816-CV33292;

v) *Sohn v. City of Kansas City, Missouri*, Case No. 1816-CV33571; and

w) *Mujahid v. City of Kansas City, Missouri,* Case No. 1916-CV04435.

44.    The allegations in the cases identified in the preceding paragraph and in similar cases, along with any decisions, rulings, and/or verdicts therein, provide further evidence:

a)    of Defendant's patterns, policies, practices, and/or customs of depriving its employees including, but not limited to, African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation;

b)    of Defendant's patterns, policies, practices, and/or customs of failing to take appropriate steps to remedy the deprivation of the constitutional rights, privileges, and/or immunities including, but not limited the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation suffered by its employees including, but not limited to, African American employees (including Plaintiff);

c)    that Defendant knew, or should have known, of patterns, policies, practices, and/or customs that deprived its employees, including African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation; and/or

d)    that Defendant knew, or should have known, that it had not taken, or was not taking, appropriate steps to remedy the patterns, policies, practices,

and/or customs that deprived African American employees (including Plaintiff), of constitutional rights, privileges, and/or immunities including, but not limited to, the deprivations caused by harassment, discrimination, a hostile work environment, and/or retaliation.

## COUNT I
## Race Discrimination

45.     Plaintiff incorporates by reference all allegations of this Complaint as if set forth herein.

46.     By virtue of 28 U.S.C. § 1981, Plaintiff has a right to be free from racial harassment and discrimination by his employer, the Defendant herein, and those acting on behalf of Defendant.

47.     Defendant is accountable under 42 U.S.C. § 1983 for its violations of 28 U.S.C. § 1981, 28 U.S.C. § 1983, and/or for violating Plaintiff's rights pursuant to the Fourteenth Amendment to the United States Constitution because Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs as alleged herein:

a)     constituted, caused, and/or resulted in unlawful employment discrimination against Plaintiff;

b)     deprived Plaintiff of the rights, privileges, and/or immunities secured by the United States Constitution and/or laws of the United States including, but not limited to, the right to be free from racial discrimination and/or racial harassment;

b)     resulted in treatment of Plaintiff which, because of his race, was different,

Case 4:19-cv-00237-DGK   Document 25   Filed 09/11/19   Page 16 of 22

adverse, and/or harsher than the treatment of similarly situated employees who are not African Americans;

c)     constituted, demonstrated, and/or were motivated by discriminatory animus toward African-Americans, including Plaintiff;

d)     intended, encouraged, endorsed, and/or permitted Defendant's agents and employees to violate the rights of Plaintiff and similarly situated employees including, but not limited to, discriminating against Plaintiff and similarly situated employees based on race; and/or

e)     constituted, caused, and/or resulted in Defendant's failure to take prompt and effective remedial action to end the discrimination, harassment, hostile work environment, and/or retaliation to which Plaintiff and similarly situated individuals were subjected when Defendant knew or should have known of the discrimination, harassment, and/or the hostile work environment.

48.     In addition or in the alternative, Defendant is accountable under 42 U.S.C. § 1983 for its violations of 28 U.S.C. § 1981, 28 U.S.C. § 1983, and/or for violating Plaintiff's rights pursuant to the Fourteenth Amendment to the United States Constitution because Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs as alleged herein show Defendant's deliberate and/or reckless indifference to the rights of Plaintiff and those similarly situated.

49.     As a direct and proximate result of Defendant's unlawful and/or unconstitutional actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs, Plaintiff has lost wages; suffered a detrimental job record; and suffered garden-variety mental and emotional

distress in the form of embarrassment, degradation, humiliation, anxiety, stress, loss of enjoyment of life, and loss of sleep, pain and suffering; and sustained other nonpecuniary losses.

50.     Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs justify an award of punitive damages because they establish that Defendant engaged in discrimination, harassment, retaliation, and/or created a hostile work environment either with malice or with reckless indifference to the rights of African American employees, including Plaintiff.

51.     In addition or in the alternative, Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs justify an award of punitive damages because they establish that Defendant exhibited reckless indifference toward the discriminatory, harassing, and/or retaliatory actions taken by those serving in a managerial capacity.

WHEREFORE, Plaintiff prays for Judgment against Defendant finding Defendant's acts, omissions, misconduct, patterns, policies, practices, and/or customs deprived Plaintiff of his rights, privileges, and/or immunities; finding Defendant's acts, omissions, misconduct, patterns, policies, practices, and/or customs violated 42 U.S.C. § 1981, 42 U.S.C. § 1983, and/or the Fourteenth Amendment to the United States Constitution; awarding Plaintiff actual, compensatory, and punitive damages; awarding Plaintiff all costs, expenses, expert witness fees, and attorneys' fees incurred herein; awarding Plaintiff prejudgment and post-judgment interest at the highest lawful rate; awarding Plaintiff appropriate equitable relief including, but not limited to, requiring Defendant to place Plaintiff in the same position he would have been absent the illegal discrimination; and for such other relief as the Court deems just and proper.

## COUNT II

**Hostile Work Environment**

52.      Plaintiff incorporates by reference all allegations of this Complaint as if set forth fully herein.

53.      By virtue of 28 U.S.C. § 1981, Plaintiff had a right to be free from a racially hostile work environment.

54.      Plaintiff was subjected to unwelcome discrimination, harassment, and/or retaliation based on Plaintiffs race as described herein.

55.      The discrimination, harassment, and/or retaliation to which Plaintiff was subjected as alleged herein caused his workplace to be permeated with discriminatory intimidation, ridicule, and/or insult.

56.      Defendant is accountable under 42 U.S.C. § 1983 for its violations of 28 U.S.C. § 1981, 28 U.S.C. § 1983, and/or Plaintiff's Fourteenth Amendment to the United States Constitution because Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs as alleged herein:

       a)      constituted, caused, and/or resulted in unlawful employment discrimination against Plaintiff;

       b)      constituted, caused, and/or resulted in Plaintiff's workplace being permeated with discriminatory intimidation, ridicule, and/or insult;

       c)      constituted, caused, and/or resulted in Plaintiff being subjected to discrimination, harassment, retaliation, intimidation, ridicule, and/or insult that was sufficiently severe or pervasive so as to alter the conditions of his employment and create a hostile or abusive working environment;

       d)      deprived Plaintiff of the rights, privileges, and/or immunities secured by

Case 4:19-cv-00237-DGK   Document 25   Filed 09/11/19   Page 19 of 22

the United States Constitution and/or laws of the United States including, but not limited to, the right to be free from a racially hostile work environment;

e) constituted, caused, and/or resulted in a work environment for Plaintiff which, because of his race, was different, adverse, and/or harsher than the environment of similarly situated employees who are not African Americans;

f) constituted, demonstrated, and/or were motivated by discriminatory animus toward African-Americans, including Plaintiff;

g) intended, encouraged, endorsed, and/or permitted Defendant's agents and employees to violate the rights of Plaintiff and similarly situated employees including, but not limited to, creating and/or maintaining racially hostile work environment; and/or

h) constituted, caused, and/or resulted in Defendant's failure to take prompt and effective remedial action to end the hostile work environment to which Plaintiff and similarly situated individuals were subjected when Defendant knew or should have known of the hostile work environment.

57. In addition or in the alternative, Defendant is accountable under 42 U.S.C. § 1983 for its violations of 28 U.S.C. § 1981, 28 U.S.C. § 1983, and/or for violating Plaintiff's rights pursuant to the Fourteenth Amendment to the United States Constitution because Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs as alleged

herein show Defendant's deliberate and/or reckless indifference to the rights of Plaintiff and those similarly situated.

58.     As a direct and proximate result of Defendant's unlawful and/or unconstitutional actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs, Plaintiff has lost wages; suffered a detrimental job record; and suffered garden-variety mental and emotional distress in the form of embarrassment, degradation, humiliation, anxiety, stress, loss of enjoyment of life, and loss of sleep, pain and suffering; and sustained other nonpecuniary losses.

59.     Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs justify an award of punitive damages because they establish that Defendant engaged in discrimination, harassment, retaliation, and/or created a hostile work environment either with malice or with reckless indifference to the rights of African American employees, including Plaintiff.

60.     In addition or in the alternative, Defendant's actions, inactions, omissions, misconduct, patterns, policies, practices, and/or customs justify an award of punitive damages because they establish that Defendant exhibited reckless indifference toward the discriminatory, harassing, and/or retaliatory actions taken by those serving in a managerial capacity.

WHEREFORE, Plaintiff prays for Judgment against Defendant finding Defendant's acts, omissions, misconduct, patterns, policies, practices, and/or customs deprived Plaintiff of his rights, privileges, and/or immunities; finding Defendant's acts, omissions, misconduct, patterns, policies, practices, and/or customs violated 42 U.S.C. § 1981, 42 U.S.C. § 1983, and/or the Fourteenth Amendment to the United States Constitution; awarding Plaintiff actual, compensatory, and punitive damages; awarding Plaintiff all costs, expenses, expert witness fees, and attorneys' fees incurred herein; awarding Plaintiff prejudgment and post-judgment interest at the highest lawful

rate; awarding Plaintiff appropriate equitable relief including, but not limited to, requiring Defendant to place Plaintiff in the same position he would have been absent the illegal discrimination; and for such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on the issues herein.

Respectfully submitted,

LUNCEFORD LAW FIRM, LLC

by:*/s/ David A. Lunceford*
David A. Lunceford, MO #47014
201 Southeast 1st Street
Lee's Summit, Missouri 64063
Telephone: (816) 525-4701
Facsimile: (816) 347-0366
LLF.DLunceford@gmail.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned certifies that, on this 11h day of September 2019, Plaintiff's First Amended Complaint was electronically filed using the court's CM/ECF system which will send notification of such filing to all counsel of record.

by:*/s/ David A. Lunceford*
David A. Lunceford,